UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASCENSION ALEXIAN BROTHERS          )
800 Biesterfield Road                )
Elk Grove Village, IL 60007          )
                                     )
ASCENSION BORGESS HOSPITAL           )        Case No.  1:23-cv-2706
1521 Gull Road                       )
Kalamazoo, MI 49048                  )
                                     )
ASCENSION MACOMB-OAKLAND HOSPITAL    )
WARREN CAMPUS                        )
11800 East 12 Mile Road              )
Warren, MI 48093                     )
                                     )
ASCENSION NE WISCONSIN - ST. ELIZABETH )
CAMPUS                               )
1506 South Oneida Street             )
Appleton, WI 54915                   )
                                     )
ASCENSION PROVIDENCE                 )
6901 Medical Parkway                 )
Waco, TX 76712                       )
                                     )
ASCENSION PROVIDENCE HOSPITAL        )
SOUTHFIELD CAMPUS                    )
16001 West 9 Mile Road               )
Southfield, MI 48075                 )
                                     )
ASCENSION RIVER DISTRICT HOSPITAL    )
4100 River Road                      )
East China Township, MI 48054        )
                                     )
ASCENSION SAINT JOHN HOSPITAL        )
22101 Moross                         )
Detroit, MI 48236                    )
                                     )
ASCENSION SAINT JOHN OWASSO          )
12455 East 100th Street North        )
Owasso, OK 74055                     )
                                     )
ASCENSION SAINT JOSEPH-JOLIET        )
333 North Madison Street             )
Joliet, IL 60435                     )
                                     )
                                     )

ASCENSION SAINT VINCENT INDIANAPOLIS    )
HOSPITAL                                )
2001 West 86th Street                   )
Indianapolis, IN 46260                  )
                                        )
ASCENSION SAINT VINCENT'S EAST          )
50 Medical Park East Drive              )
Birmingham, AL 35235                    )
                                        )
ASCENSION SAINT VINCENT'S ST. CLAIR     )
7063 Veterans Parkway                   )
Pell City, AL 35125                     )
                                        )
ASCENSION SETON HAYS                    )
6001 Kyle Parkway                       )
Kyle, TX 78640                          )
                                        )
ASCENSION SETON MEDICAL CENTER          )
AUSTIN                                  )
1201 West 38th Street                   )
Austin, TX 78705                        )
                                        )
ASCENSION SETON NORTHWEST               )
11113 Research Boulevard                )
Austin, TX 78759                        )
                                        )
ASCENSION SETON WILLIAMSON              )
201 Seton Parkway                       )
Round Rock, TX 78665                    )
                                        )
ASCENSION ST. VINCENT ANDERSON          )
2015 Jackson Street                     )
Anderson, IN 46016                      )
                                        )
ASPIRUS STEVENS POINT HOSPITAL          )
900 Illinois Avenue                     )
Stevens Point, WI 54481                 )
                                        )
CARONDELET SAINT MARY'S HOSPITAL        )
1601 West Saint Mary's Road             )
Tucson, AZ 85745                        )
                                        )
MOUNT SAINT MARY'S HOSPITAL             )
5300 Military Road                      )
Lewiston NY 14092                       )
                                        )
                                        )

PROVIDENCE HOSPITAL                               )
6801 Airport Boulevard                            )
Mobile, AL 36685                                  )
                                                  )
PROVIDENCE HOSPITAL                               )
1150 Varnum Street Northeast                      )
Washington DC 20017                               )
                                                  )
SAINT JOHN MEDICAL CENTER                         )
1923 South Utica Avenue                           )
Tulsa, OK 74104                                   )
                                                  )
SAINT JOSEPH'S HOSPITAL                           )
350 North Wilmot Road                             )
Tucson, AZ 85711                                  )
                                                  )
SAINT MARY'S HEALTHCARE AMSTERDAM                 )
427 Guy Park Avenue                               )
Amsterdam, NY 12010                               )
                                                  )
SAINT VINCENT'S BLOUNT                            )
150 Gilbreath Drive                               )
Oneonta, AL 35121                                 )
                                                  )
SAINT VINCENT'S MEDICAL CENTER                    )
2800 Main Street                                  )
Bridgeport, CT 06606, and                         )
                                                  )
UNIVERSITY MEDICAL CENTER AT                      )
BRACKENRIDGE                                      )
601 East 15th Street                              )
Austin, TX 78701                                  )
                                                  )
        Plaintiffs,                               )
                                                  )
    vs.                                           )
                                                  )
XAVIER BECERRA,                                   )
Secretary of the United States Department of      )
Health and Human Services, 200 Independence       )
Avenue, S.W., Room 700-E                          )
Washington, D.C. 20201                            )
                                                  )
        Defendant.

<u>COMPLAINT FOR JUDICIAL REVIEW</u>

Plaintiffs sue Defendant, Xavier Becerra, in his official capacity as Secretary of the United States Department of Health and Human Services (HHS) and seek judicial review of the remand of their appeals before the Provider Reimbursement Review Board (Board).

## I.    STATEMENT OF THE CASE

1.    The Hospitals rely heavily on the Disproportionate Share Hospital (DSH) payment adjustment created by Congress to provide critical health care services to the vulnerable populations they serve. To ensure they received all DSH payments to which they are entitled, the Hospitals challenged whether inpatient hospital days for Medicare Part C beneficiaries should be part of the calculations for DSH adjustments.

2.    During their administrative appeals, the Secretary issued 1739-R—which declared the Board lacked jurisdiction over appeals like the Hospitals' and ordered the Board to remand the appeals back to the Medicare Administrative Contractor (MAC) for recalculation of the challenged adjustments—cutting the appeals short and rendering them moot. Centers for Medicare and Medicaid Services, CMS Ruling 1739-R ("1739-R") (August 17, 2020), https://www.cms.gov/files/document/cms-1739-r.pdf. Exhibit 1.

3.    In reliance on 1739-R, the Board remanded the Hospitals' appeals to the MAC.

4.    The Board's remand of valid appeals based on 1739-R must be vacated as arbitrary and capricious and contrary to law. The remand violated the Medicare Act and the Administrative Procedure Act (APA) by throwing out the Hospitals' rightful appeals of final Medicare payment determinations and implementing substantive payment policy changes without notice-and-comment rulemaking. The remand also violated the Fifth

Amendment by ending the properly-filed appeals and providing no mechanism for judicial review of 1739-R or the issues properly presented by the Hospitals' appeal.

5.    The Hospitals therefore request that the Court issue an order:

- Holding the Board's closure of these appeals prior to the full formation of the CIRP group is improper;

- Vacating the Board's order—which complied with 1739-R—remanding and dismissing the Hospitals' impacted appeal to the MAC;

- Reinstating the Hospitals' appeal before the Board;

- Holding that 1739-R is not enforceable and any subsequent remands were improper;

- Vacating 1739-R;

- Alternatively, issuing a writ of mandamus ordering the Secretary to rescind 1739-R and reinstate the Hospitals' appeal before the Board;

- Requiring the Secretary to recalculate the Hospitals' DSH payments for the Fiscal Periods at issue as directed by *Allina* and to make prompt payment of any additional amounts due the Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2), 42 U.S.C. § 1395g(d), or both; and

- Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals.

## II.    JURISDICTION AND VENUE

6.    This action arises under the Medicare Act, the APA, and the Constitution.

7.    This Court has jurisdiction over the Hospitals' claims under: 42 U.S.C. § 1395oo(f) (appeal of Medicare program agency final decision); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1361 (mandamus).

8.    Venue is proper under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391(e).

## III.    PARTIES

9.    Plaintiffs are hospitals that, for the cost reporting periods at issue, were participating providers of hospital services under the federal Medicare program under

Title XVII of the Social Security Act, 42 U.S.C. § 1395 *et seq*. This appeal involves two appeals before the Board, each for different years—2012 and 2013.

10.    At all times relevant to these proceedings, each Hospital was an acute-care, inpatient hospital that served a disproportionate share of low-income patients.

11.    Secretary Becerra is the federal official responsible for the administration of the Medicare Program and delegated its administration to CMS.

**A.    Fiscal Year Ending June 30, 2012, PRRB Case Nos. 15-0053GC and 15-0054GC**

12.    On October 7, 2014, three providers timely filed a Common Issue Related Parties (CIRP) appeal from their Notices of Program Reimbursement ("NPRs") for the Fiscal Year Ending ("FYE") 2012. Exhibit 2. These providers appealed what they labeled the "DSH SSI Ratio Part C Days Issue." Ex. 2, pgs. 21-22.

13.    The Board accepted the Ascension Health 2012 DSH SSI Fraction Medicare Advantage Days CIRP Group and assigned it Case No. 15-0053GC. Exhibit 3.

14.    On the same day, four providers timely filed a separate CIRP appeal of a different issue their NPRs for FYE 2012. Exhibit 4. These providers appealed what they labeled the "DSH Medicaid Ratio Part C Days Issue." Ex. 4, pgs. 24-25.

15.    The Board accepted the Ascension Health 2012 DSH Medicaid Fraction Medicare Advantage Days CIRP Group and assigned it Case No. 15-0054GC. Exhibit 5. As their NPRs came in over the following months, other providers joined these appeals.

16.    On July 11, 2017,  the Hospitals requested the Board consolidate Case Nos. 15-0053GC and 15-0054GC and bifurcate six rehabilitation hospitals into Ascension Health 2012 Rehab Medicare/Medicaid Fractions Medicare Advantage Days CIRP Group. Exhibit 6. The Hospitals also notified the Board that this consolidated CIRP Group

remained incomplete because providers 02-0090, 03-0011, 33-0011, 37-0114, and 45-0042 had not yet received their NPRs. Exhibit 6, pg. 2.

17.    By letter dated July 19, 2017, the Board combined Board Case Nos. 15-0053GC and 15-0054GC; Case No. 15-0053GC survived this consolidation; Case No. 15-0054GC did not. Exhibit 7, pg. 2.  The Board also bifurcated the rehabilitation hospitals into Case No. 17-1840GC as requested. Exhibit 7, pg. 1.

18.    On July 18, 2023, the Board dismissed Case No. 15-0053GC and remanded the Hospitals' appeals to the MAC under Ruling 1739-R. Exhibit 8. Each Hospital identified in the Schedule of Providers is a plaintiff herein. Ex. 8, pgs. 3-4. One hospital was dismissed separately.

19.    The Hospitals never notified the Board that this group appeal was fully-formed; likewise, the Board never issued an order requiring the group to demonstrate the group was not yet fully-formed. 42 C.F.R. § 405.1837(e)(1). Instead, the Board prematurely closed the Board Case No. 15-0053GC and remanded it to the MAC.

**B.    Fiscal Year Ending June 30, 2013, PRRB Case Nos. 15-2783GC and 15-2799GC**

20.    On June 18, 2015, three providers timely filed a Common Issue Related Parties (CIRP) appeal from their Notices of Program Reimbursement ("NPRs") for the Fiscal Year Ending ("FYE") 2013. Exhibit 9. These providers appealed what they labeled the "DSH SSI Ratio Part C Days Issue." Ex. 9, pgs. 38-39.

21.    The Board accepted the Ascension Health 2013 DSH SSI Fraction Part C Days CIRP Group and assigned it Case No. 15-2783GC. Exhibit 10.

22.    On June 22, 2015, those same three providers timely filed a separate CIRP appeal of a different issue their NPRs for FYE 2013. Exhibit 11. These providers appealed what they labeled the "DSH Medicaid Fraction Part C Days Issue." Ex. 11, pgs. 37-38.

23.     The Board accepted the Ascension Health 2013 DSH Medicaid Fraction Part C Days CIRP Group and assigned it Case No. 15-2799GC. Exhibit 12.

24.     On August 16, 2016,  the Hospitals requested the Board consolidate Case Nos. 15-2783GC and 15-2799GC. Exhibit 13. The Hospitals also notified the Board that this consolidated CIRP Group remained incomplete because 21 providers had not yet joined or received their NPRs. Exhibit 13, pgs. 1 & 4.

25.     By letter dated September 1, 2016, the Board combined Board Case Nos. 15-2783GC and 15-2799GC; Case No. 15-2783GC survived this consolidation; Case No. 15-2799GC did not. Exhibit 14, pg. 1.

26.     On August 1, 2023, the Board dismissed Case No. 15-2783GC and remanded the Hospitals' appeals to the MAC under Ruling 1739-R. Exhibit 15. Each Hospital identified in the Schedule of Providers is a plaintiff herein. Ex. 15, pgs. 2-3. Three providers were dismissed separately.

27.     The Hospitals never notified the Board that this group appeal was fully-formed; likewise, the Board never issued an order requiring the group to demonstrate the group was not yet fully-formed. 42 C.F.R. § 405.1837(e)(1). Instead, the Board prematurely closed the Board Case No. 15-0053GC and remanded it to the MAC.

### IV.    STATUTORY AND REGULATORY BACKGROUND

## A.    Qualification for Disproportionate Share Hospital Status

28.     Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(1). Since 1983, the Medicare Program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system (PPS). 42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to payment adjustments. *Id.*

29.    A hospital that serves a disproportionate share of low-income patients qualifies for an upward percentage adjustment to the standard PPS rates. 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I), (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). As a proxy for the amount of low-income patients served by a hospital, the disproportionate patient percentage determines a hospital's qualification for the DSH payment adjustment, and determines the amount of their DSH adjustment. 42 U.S.C. §§ 1395ww(d)(5)(f)(iv), (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

30.    The Medicare/SSI Fraction is the percentage of a hospital's inpatients entitled to Medicare Part A who are also entitled to Supplemental Security Income (SSI) benefits during their stay:

$$\frac{\textbf{\textit{Medicare Part A/SSI Days}}}{\textbf{\textit{Total Medicare Part A Days}}}$$

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The denominator counts all Medicare Part A days while the numerator only counts Part A days for patients who are also entitled to SSI benefits under Title XVI. CMS computes the Medicare Fraction for each federal fiscal year, and must use the fraction to compute a hospital's DSH payment adjustment for the cost reporting period beginning in the federal fiscal year. 42 C.F.R. § 412.106(b)(2)-(3).

31.    The Medicaid Fraction is the percentage of a hospital's total days for inpatients "who were not entitled to benefits under [Medicare] Part A" but are "eligible for medical assistance" under a state plan during their stay:

9

*Medicaid, Non-Medicare Part A Days*

---

*Total Patient Days*

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The denominator of the Medicaid Fraction is the hospital's total inpatient days; the numerator is the hospital's number of inpatient days caring for patients who were both eligible for medical assistance under Title XIX, or Medicaid, and "not entitled to benefits under part A" of Title XVIII, or Medicare. *Id.*

## B.    Regulatory History of the Inclusion of Medicare Advantage Days in DSH Calculation

32.    In addition to Medicare's original fee-for-service programs—Parts A and B—Part C provides beneficiaries the option to receive services from managed care entities known as Medicare Advantage programs. 42 U.S.C. § 1395mm.

33.    That statute provides for "payment to an eligible organization under this section for individuals enrolled under this section with the organization and entitled to benefits under part A of this subchapter and enrolled under part B of this subchapter." 42 U.S.C. §1395mm(a)(5). Inpatient hospital days for Medicare beneficiaries enrolled in health maintenance organizations (HMOs) and competitive medical plans before 1999 are known as Medicare HMO patient care days. In the September 4, 1990 Federal Register, the Secretary of Health and Human Services stated that:

> Based on the language of section 1886(d)(5)(F)(vi) of the Act [42 U.S.C. § 1395wvv(d)(5)(F)(vi)], which states that the disproportionate share adjustment computation should include "patients who were entitled to benefits under Part A," we believe it is appropriate to include the days associated with Medicare patients who receive care at a qualified HMO. Prior to December 1, 1987, we were not able to isolate the days of care associated with Medicare patients in HMOs, and therefore, were unable to fold this number into the calculation [of the DSH adjustment]. However, as of December 1, 1987, a field was included on the Medicare Provider Analysis and Review (MEDPAR) file that allows us to isolate those HMO days that were associated with Medicare patients. Therefore, since that time we have

been including HMO days in the SSI/Medicare percentage [of the DSH adjustment].

(55 Fed. Reg. 35,990, 39,994 (September 4, 1990)). Medicare Part A paid for HMO services and patients remained eligible for Part A.

## C.    Medicare Part C

34.    With the creation of Medicare Part C, Medicare beneficiaries could opt out of their entitlement to benefits under Part A. Consistent with the statutory change, CMS did not include Medicare Part C days in the SSI ratios used by the intermediaries to calculate DSH payments for the FY 2001-2004. This added Medicare Advantage Days into the Medicaid Fraction's denominator and the numerator for patients who were also Medicaid eligible. In response to confusion from providers about the placement of Medicare Advantage Days within the DSH calculation, the Secretary proposed to clarify the policy for Medicare Advantage Days in the FFY 2004 Inpatient PPS Proposed Rule:

> once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage. These patient days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for the M+C beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction.

68 Fed. Reg. 27154, 27208 (May 19, 2003). The Secretary noted no major financial impact associated with this proposal. 68 Fed. Reg. at 27,416. This proposal was not finalized.

35.    In the FFY 2005 Inpatient PPS Final Rule, the Secretary made a complete about-face and decided Medicare Advantage Days should be counted in the Medicare Fraction for DSH because "they are still, in some sense, entitled to benefits under Medicare Part A." 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). CMS  incorporated this policy into the DSH regulation with no opportunity for hospitals to comment on the change of position. 42 C.F.R. § 412.106(b)(2).

36.    The 2005 policy change harmed hospitals that care for the medically indigent. Many Medicare Advantage patients do not receive SSI; thus, the change added more days to the denominator than the numerator, reducing the SSI percentage and diluting the hospitals' payment.

37.    Although the change in policy was finalized on August 11, 2004, no change in regulatory language was published until the FFY 2008 Inpatient PPS Final Rule. Three years later, the Secretary stated that no regulatory change had occurred and announced that the changes only made "technical corrections" to the regulatory language consistent with the change announced in the FFY 2005 Final Rule. As a result, Medicare Advantage days needed to be included in the Medicare Fraction as of October 1, 2004. In the Federal Register notice for the FFY 2008 Final Rule, the Secretary made these comments:

> In the FY 2005 IPPS final rule ... we discussed in the preamble our policy change to reflect the inclusion of the days associated with ... Medicare Advantage beneficiaries under Medicare Part C in the Medicare fraction of the DSH calculation. In that rule, we indicated that we were revising the regulation text ... to incorporate this policy. However, we inadvertently did not make a change in the regulation text to conform to the preamble language. We also inadvertently did not propose to change § 412.106(b)(2)(iii) in the FY 2005 final rule, although we intended to do so. ... We intended to amend the regulation text with respect to both the numerator and the denominator of the Medicare fraction of the Medicare DPP. Therefore, in this final rule with comment period, we are making this technical correction to § 412.106(b)(2)(i) and to § 412.106(b)(2)(iii) to make them consistent with the preamble language of the FY 2005 IPPS final rule and to effectuate the policy iterated in that rule.
>
> With respect to the technical correction that we are making to § 412.106(b)(2)(iii), we note that we ordinarily publish a notice of proposed rulemaking in the Federal Register to provide for a period for public comment before a provision such as this would take effect. However, we can waive this procedure if an agency finds good cause that a notice and comment procedure is impracticable, unnecessary, or contrary to the public interest and incorporates a statement of the finding and its reasons in the notice issued. We find it unnecessary to undertake notice and comment rulemaking in this instance for the additional change to § 412.106(b)(2)(iii) because this notice merely provides technical corrections to the regulations

and does not make any substantive changes to the regulations or our existing policy. Therefore, under 5 U.S.C. § 533(b)(B), for good cause, we waive notice and comment procedures.

72 Fed. Reg. 47,130, 47,384 (August 22, 2007) (cleaned up).

## D.    The Medicare Act's Notice-and-Comment Rulemaking requirement is independent of the APA's similar requirement

38.    The Supreme Court held that the Medicare Act requires "notice and [a] 60-day comment period – for any 'rule, requirement, or other statement of policy ... that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services ... under [Medicare]." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019) (cleaned up).

39.    Though similar to the APA's requirements, the Medicare Act's Notice-and-Comment requirement is broader and covers agency interpretive guidelines.

## E.    Appealing to the Board

40.    The Board is an administrative tribunal appointed by the Secretary. 42 U.S.C. § 139500(h). Each of the appointed members of the Board must be "knowledgeable in the field of payment to providers of services" under the Medicare program. *Id.*

41.    A hospital has a statutory right to appeal to the Board if it is dissatisfied with a MAC's determination for the amount of Medicare payment due the hospital. 42 U.S.C. § 139500(a)(1)(A)(i).

42.    A hospital may take an appeal to the Board individually or may pursue a group appeal of an issue that is common to two or more hospitals. 42 U.S.C. § 139500(a), (b); 42 C.F.R. §§ 405.1835 & 405.1837.

43.    The amount in controversy for a group appeal to the Board must be at least $50,000 in the aggregate. 42 U.S.C. § 139500(b); 42 C.F.R. §§ 405.1835 & 405.1837.

## V.    FACTUAL BACKGROUND

### A.    Proposed Ruling: 1739-P

44.    In August 2020, the Secretary published *Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage*, a proposed rule (1739-P). 85 Fed. Reg. 47,723 (August 6, 2020).

45.    Through 1739-P, the Secretary is proposing retroactive rulemaking in response to the *Allina* litigation—thus placing the Part C Days in the Medicare Fraction of the DSH calculation dating back to FY 2004.

46.    If incorporated into a final rule, the substantive policy of 1739-P would remove any financial benefit associated with the Hospitals' proper challenge of the Secretary's prior rulemaking that was invalidated in *Allina II*.

### B.    Implementation of Final Ruling 1739-R

47.    CMS issued 1739-R eleven days after issuing 1739-P. CMS claims that 1739-R provides a framework for the MACs to "calculate the provider's [DSH] payment adjustment pursuant to the forthcoming final rule." Ex. 1, pg. 2.

48.    The Secretary applies 1739-R retroactively to appeals—including those already pending—that include the *Allina II* issue "regarding patient days with discharge dates before October 1, 2013 that arise from [NPRs] that are issued before CMS issues a new final rule to govern the treatment of patient days with discharge dates before October 1, 2013." (*Id*).

49.    Lacking "an appropriate basis for a new reopening of any final determination," 1739-R revoked the Hospitals' appeal rights by terminating their pending appeal and effectively barring the MAC from issuing a recalculated payment that would allow the Hospitals to reinitiate appeals on the "Part C days DSH issue." Ex. 1, pg. 9.

50.    The Secretary's ruling is binding on the Board and it lacks any authority to assess the validity of the same. 42 C.F.R. § 405.1837.

## C.    The Board's Remand of Medicare and Medicaid Part C Days Appeals Under CMS Ruling 1739-R is Premature

51.    After the close of each fiscal year, a hospital must file a cost report with its designated MAC. 42 C.F.R. §§ 413.20 & 412.24.

52.    The MAC audited the Hospitals' cost reports and issued NPRs informing the Hospitals of the MAC's final determinations for the amount of reimbursement the Hospitals would receive. 42 C.F.R. § 405.1803. The NPRs were final agency decisions. *Id.*

53.    The Hospitals preserved their appeal rights under 42 U.S.C. § 139500 to challenge the act of including Part C days in the Medicare Fractions of its DSH calculation.

54.    The Hospitals timely filed their Board appeals challenging how inpatient hospital days should be counted for Medicare DSH payment purposes when the Medicare beneficiary was eligible for Medicare and enrolled in a Medicare Part C plan during the inpatient stay.

55.    The Board has now reversed course based on Ruling 1739-R. On July 18, 2023 and August 1, 2023, respectively, the Board closed Board Case Nos. 15-0053GC and 15-2783GC, writing that the appeals included:

> a challenge to the inclusion of Medicare Part C days in the Medicare fraction of the disproportionate share ("DSH") percentage and/or the exclusion of Medicare Part C days for patients who are dually eligible for Medicaid from the Medicaid fraction of the DSH percentage, for patient discharges *before* October 1, 2013. This issue is governed by Centers for Medicare & Medicaid Services ("CMS") Ruling CMS-1739-R and, under the terms of this Ruling, the Provider Reimbursement Review Board ("Board") must remand this issue to the Medicare Contractor for calculation of the DSH payment adjustment in accordance with the forthcoming final rule CMS will issue "to govern the treatment of [Medicare Part C] patient days with

discharge dates before October 1, 2013." *See also* 58 Fed. Reg. 47723 (Aug. 6, 2020).

Ex. 47, pg. 1; Ex. 77, pg. 1. Simultaneously, the Board noted that the Hospitals "met the jurisdictional and procedural requirements under 42 U.S.C. § 139500, 42 C.F.R. Part 405, Subpart R, and Board Rules for the Medicare Part C Issue." Ex. 47, pg. 1; Ex. 77, pg. 1.

56.     Any action under 1739-R is premature until the proposed rule is finalized by the Secretary.

## D.    The Secretary's Enactment of 1739-R is an Abuse of Discretion and Not in Accordance with Law

57.     The Medicare Act provides for judicial review of final actions by the Secretary. 42 U.S.C. §139500(f)(1).

58.     The Hospitals properly preserved their appeal rights. 42 U.S.C. § 139500(f)(1).

59.     CMS rulings cannot strip the Hospitals of the appeal rights granted by Congress. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 814 (D.C. Cir. 2001).

### VI.    BASES OF APPEAL

### Count I: Violation of the Medicare Act
### (Hospitals' Appeal Rights)

60.     Plaintiffs incorporate the allegations above as if set forth fully here.

61.     The Hospitals have a right to appeal to the Board a final payment determination made by the MAC and to obtain interest on any recovery ultimately received. 42 U.S.C. § 139500(f).

62.     The Hospitals satisfied all requirements for appeal under the Medicare Act.

63.     The Hospitals properly instituted a mandatory CIRP group appeal of the type expected to include additional commonly-owned hospitals.

64.     The Hospitals successfully preserved the right of all hospitals in its mandatory CIRP Group to appeal the placement of Part C Days in the DSH payment calculation. The Hospitals' appeal was thus properly before the Board. 42 U.S.C. § 139500.

65.     The Board exercised jurisdiction over the Hospitals and the issues on appeal.

66.     The Board remanded the Hospitals' appeals before the mandatory CIRP group was fully formed.

67.     Through 1739-R and the subsequent remand by the Board, the Secretary and CMS violated their nondiscretionary duty to permit the Hospitals to appeal for payment and interest as required under the Medicare Act.

68.     By acting outside the law, the Secretary and the Board effectively revoked the Hospitals' statutory rights to appeal.

69.     By violating the Hospitals' rights to appeal, the Secretary acted contrary to the law and violated the Medicare Act.

70.     The Secretary's actions have harmed the Hospitals, entitling them to relief.

### Count II: Violation of the Medicare Act
### (Notice-and-Comment Rulemaking)

71.     Plaintiffs incorporate the allegations above as if set forth fully here.

72.     The Medicare Act requires the Secretary to subject any rules, requirements, or other policy statements that impact a provider's payment to Notice-and-Comment Rulemaking. 42 U.S.C. § 1395hh(a)(2); *Allina Health Servs.*, 139 S. Ct. at 1809.

73.     Through CMS Ruling 1739-R, the Secretary sought to implement proposed rules, requirements, and other policies that impact the Hospitals' reimbursement under the Medicare program.

74.     1739-R did not undergo Notice-and-Comment rulemaking as required by law.

75.     The Secretary's actions have harmed the Hospitals and they are entitled to relief.

## Count III: Violation of the APA

76.     Plaintiffs incorporate the allegations above as if set forth fully here.

77.     The Secretary's ruling arbitrarily, capriciously, and in violation of the Medicare Act disrupted the Hospitals' proper appeal and blocked the Hospitals from their statutory right to appeal.

78.     The Secretary's ruling violated the Medicare Act by implementing changes to rules, requirements, or other substantive statements of policy that impact provider reimbursement without Notice-and-Comment rulemaking. *See* 42 U.S.C. § 1395hh(a).

79.     The Secretary acted contrary to the law and in violation of the APA by issuing 1739-R to enforce a proposed rule.

80.     The Secretary's actions have harmed the Hospitals and they are entitled to relief.

## Count IV: Mandamus

81.     Plaintiffs incorporate the allegations above as if set forth fully here.

82.     The Hospitals are entitled to a writ of mandamus prohibiting the PRRB from remanding its appeal to the MAC. 28 U.S.C. § 1361.

83.     The Hospitals have a right to appeal pursuant to the Medicare Act. The Hospitals successfully preserved their rights to appeal the placement of Part C Days in the DSH payment calculation. The Hospitals' appeals were thus properly before the Board. 42 U.S.C. § 139500.

84.     The Secretary has a nondiscretionary duty to permit the Hospitals to exercise their rights to appeal or otherwise comply with the law. 42 U.S.C. § 139500.

85.     The Secretary's ruling violated that duty to permit the Hospitals' appeals. In following 1739-R, the Board dismissed the Hospitals' appeals—incorrectly asserting the appeals were moot under a proposed (not finalized) rule.

86.     CMS rulings cannot strip the Hospitals of their appeal rights, nor alter the duties imposed on the Secretary by Congress. *Monmouth Med. Ctr.*, 257 F.3d at 814.

87.     The Secretary's ruling halted the Hospitals' appeal, removing the Board's ability to adjudicate the appeals, and leaving no other adequate remedy.

88.     Thus, the Hospitals request an order from this Court directing the Secretary to restore the Hospitals' appeal.

## Count V: All Writs Act

89.     Plaintiffs incorporate the allegations above as if set forth fully here.

90.     The Secretary violated the Medicare Act and APA by ordering the PRRB to remand the Hospitals' appeal.

91.     The All Writs Act provides that federal district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

92.     This Court, having jurisdiction over this Complaint, should issue an order reversing the PRRB's remand of the Hospitals' appeal under the Secretary's improper ruling.

## Count VI: Violation of Due Process

93.     Plaintiffs incorporate the allegations above as if set forth fully here.

94.     The Hospitals have a protected liberty or property interest in the reimbursement provided by CMS.

95.     The Hospitals are entitled to vindicate this right by appealing CMS's underpayments to the PRRB; the Hospitals were pursuing these appeal rights when the Secretary issued 1739-R disrupting the Hospitals' right to appeal.

96.     1739-R thus deprived the Hospitals of their appeal rights and constitutional rights to due process.

97.     This constitutional violation is a question of federal law over which this Court has jurisdiction over. 28 U.S.C. § 1331.

## VII.    REQUEST FOR RELIEF

The Hospitals thus request an Order:

1.  Holding the Board's closures of these appeals prior to the full formation of the CIRP group is improper;

2.  Vacating the Board's order—which complied with 1739-R—remanding and dismissing the Hospitals' impacted appeal to the MAC;

3.  Reinstating the Hospitals' appeal before the Board;

4.  Holding that 1739-R is not enforceable and any subsequent remands were improper;

5.  Vacating 1739-R;

6.  Alternatively, issuing a writ of mandamus ordering the Secretary to rescind 1739-R and reinstate the Hospitals' appeals before the Board;

7.  Requiring the Secretary to recalculate the Hospitals' DSH payments for the Fiscal Periods at issue as directed by *Allina* and to make prompt payment of any additional amounts due the Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2), 42 U.S.C. § 1395g(d), or both; and

8.  Requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

By:____/s/ *Andrew B. Howk*_____
   Andrew B. Howk, Attorney No. IN0005
   Ryan A. McDonald, Attorney No. IN0010
   500 North Meridian Street, Suite 400
   Indianapolis, IN  46204-1293
   Ph:  (317) 633-4884
   ahowk@hallrender.com
   rmcdonald@hallrender.com
   *Attorneys for Plaintiffs*

## Exhibit List

1. 1739-R
2. 15-0053GC Model Form B Group Appeal Request
3. PRRB Acknowledgement of 15-0053GC
4. 15-0054GC Model Form B Group Appeal Request
5. PRRB Acknowledgement of 15-0054GC
6. Request to Consolidate 15-0053GC and 15-0054GC
7. Board Letter Consolidating into 15-0053GC
8. Board Letter Dismissing, Remanding, and Closing 15-0053GC
9. 15-2783GC Model Form B Group Appeal Request
10. PRRB Acknowledgement of 15-2783GC
11. 15-2799GC Model Form B Group Appeal Request
12. PRRB Acknowledgement of 15-2799GC
13. Request to Consolidate 15-2783GC and 15-2799GC
14. Board Letter Consolidating into 15-2783GC
15. Board Letter Dismissing, Remanding, and Closing 15-2783GC